THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NATIONAL FLOUR MILLS AND
SUPPLY COMPANY LLC, et al.,
    Plaintiffs,

v.

ORLANDO SANTIAGO, INC.,
    Defendant.

Civil No. 08-1628 (ADC)

**OPINION AND ORDER**

Through the present action, plaintiffs, National Flour Mills and Supply Company LLC ("NFMS") and Giles Enterprises, Inc. ("Giles") (collectively, "plaintiffs"), seek a declaration that the arbitration covenants contained in numerous agreements entered into between the parties are enforceable and that any provision of local law prohibiting or hindering arbitration is unconstitutional. **Docket No. 1.** Presently before this court is defendant, Orlando Santiago, Inc.'s ("OSI" or "defendant") motion to dismiss the complaint for lack of subject matter jurisdiction. **Docket No. 10.**[1] For the reasons set forth below, the motion to dismiss is **GRANTED**.

**I.    Factual Background**

Unless otherwise noted, the allegations relevant to this motion are derived from the complaint. **Docket No. 1**.

NFMS is the owner of the "Chester's" franchise, trade name and trademark. *Id.* at ¶ 6. NFMS offers for sale to its franchisees and others breading, seasoning, paper items, fryer paper items, fryer filter powder, fryer cleaning supplies, and other items marketed under the Chester's trade name and trademark. *Id.* NFMS is also the owner of the "Cruisin'" trade

---

[1] In their opposition to defendant's motion to dismiss, plaintiffs cross-moved for judgment on the pleadings or for summary judgment. **Docket No. 14**. In light of the court's decision to grant defendant's motion to dismiss, the court will not decide said motion.

name and trademark. *Id.* at ¶ 7. NFMS offers for sale equipment, breading, seasoning, paper items, fryer paper items, fryer filter powder, fryer cleaning supplies, and other items marketed under the Cruisin' trade name and trademark. *Id.* Giles is the owner of the "Giles" trade name and trademark. *Id.* at ¶ 8. Giles manufactures and sells commercial food service equipment for use in food preparation, food display, and merchandising marketed under the Giles trade name and trademark. *Id.*

On November 11, 2005, Chester's and defendant entered into a Distributor Agreement For Chester's Supplies, which was extended pursuant to an Extension Agreement dated September 29, 2006, until December 31, 2007 (the "Chester's Agreement"). *Id.* at ¶ 9. On November 11, 2005, Cruisin' and defendant entered into a Cruisin' Fried Chicken Distributor Agreement, which was extended pursuant to an Extension Agreement dated September 29, 2006, until December 31, 2007 (the "Cruisin' Agreement"). *Id.* Finally, on November 11, 2005, Giles and defendant entered into a Giles Foodservice Equipment Stocking Distributor Agreement, which was extended pursuant to an Extension Agreement dated September 29, 2006, until December 31, 2007 (the "Giles Agreement" and collectively the "Agreements"). According to plaintiffs, the Agreements expired on December 31, 2007, and defendant chose not to accept plaintiffs' offers for renewal or reappointment under what they termed substantially similar terms as those contained in the Agreements. *Id.* at ¶ 10.

As a result, and pursuant to the terms of the Chester's Agreement, plaintiffs sought to enforce, *inter alia*, a Buy-Out Amendment to the Chester's Agreement. *Id.* at ¶ 11. Defendant refused, challenged the enforceability of the Buy-Out Amendment. *Id.* Nevertheless, the parties continued to attempt to resolve the controversy until the instant action was commenced. *Id.* In order to resolve the controversy and enforce the terms and conditions of the Agreements, including the Buy-Out Amendment, plaintiffs, pursuant to the terms of the Agreements, made a demand for arbitration. *Id.* at ¶ 12.

## II. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)

Under Rule 12(b)(1), a defendant may move to dismiss an action against it for lack of federal subject-matter jurisdiction. Since federal courts are courts of limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating its existence. *See Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995). In assessing a motion to dismiss for lack of subject-matter jurisdiction, a district court "must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs." *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998) (citing *Royal v. Leading Edge Prods., Inc.*, 833 F.2d 1 (1st Cir. 1987)). Additionally, a court may review any evidence, including submitted affidavits and depositions, to resolve factual disputes bearing upon the existence of jurisdiction. *See Land v. Dollar*, 330 U.S. 731, 734-35 (1947); *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996) (citation omitted).

## III. Discussion

The Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), affords only a remedy, not an independent grant of federal jurisdiction. *See id.* at § 2201(a) ("In a case of actual controversy *within its jurisdiction* . . . any court . . . may declare the rights or other legal relations of any interested party seeking such declaration. . . .") (emphasis added). As such, plaintiffs' claim of subject matter jurisdiction is based solely upon diversity of citizenship. 28 U.S.C. § 1332. In this regard, defendant contends that the court lacks subject matter jurisdiction over the instant action because plaintiffs have failed to: (1) establish that there is an actual case or controversy that must be resolved by this court, (2) state a specific matter in controversy which exceeds the jurisdictional limit required for diversity jurisdiction, (3) set forth any claim which allows them to invoke the arbitration clauses contained in the Agreements, and (4) set forth which local law is prohibited or hindering the arbitration. **Docket No. 10**. In response, plaintiffs contend that their claim exceeds the $75,000 jurisdictional limit, and that there is an actual ripe controversy before the court. **Docket No.**

**14**. Further, plaintiffs aver that they have adequately pled a claim for the declaration that any provision of Act 75 is contrary to the FAA and is unconstitutional. *Id.*

Article III of the Constitution of the United States limits the court's jurisdiction to cases and controversies. U.S. Const. art. III, § 2, cl.1. The Supreme Court has interpreted this requirement to mean that federal courts cannot issue advisory opinions. *See Igartua-De la Rosa v. United States*, 417 F.3d 145, 153 (1st Cir. 2005) ("The Supreme Court has interpreted this 'case or controversy' requirement to mean, among other things, that federal courts do not issue advisory opinions."). The DCA explicitly recognizes the Constitution's case or controversy requirement by premising relief on the existence of an "actual controversy." 28 U.S.C. § 2201(a)[2]; *Sallen v. Corinthians Licenciamentos* LTDA, 273 F.3d 14, 25 n.12 (1st Cir. 2001). "In the trial court . . . a party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy." *Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240-241 (1937)). In determining whether this burden has been satisfied, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941). "If the plaintiff cannot show that his injury 'is likely to be redressed by a favorable decision,' the federal court's 'exercise of its power . . . would be gratuitous and thus inconsistent with the Art. III limitation.'" *Igartua-De La Rosa v. U.S.*, 417 F.3d 145, 153 (1st Cir. 2005) (quoting *Simon*, 426 U.S. at 38).

After reviewing the complaint, motion to dismiss and the attached materials, it is evident that plaintiffs have failed to satisfy their jurisdictional burden. Notwithstanding their

---

[2] In relevant part the DCA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

contentions, plaintiffs have not submitted any actual grievance, dispute, or controversy to the court.  Here, plaintiffs' request the court to issue a declaratory judgment that the arbitration provisions contained in the Agreements are enforceable and that any provision of local law prohibiting or hindering arbitration is unconstitutional.  The problem here is that these questions are not in actual dispute.  Contrary to plaintiffs' contentions, defendant has not questioned the validity of the arbitration covenants, nor have they filed suit.  In fact, a review of the submitted documents (and the record) indicates that defendant has acknowledged the validity of the arbitration covenants, has indicated its willingness to arbitrate and that it will not file suit unless plaintiffs "attempt to unlawfully impair or terminate their distribution relationship" prior to arbitrating their claim.  **Docket No. 9**, at 4; *see also* **Docket No. 15**, at 3-4 ("OSI at all times, before and after the filing of this Complaint, has made it clear to plaintiffs that it will seek injunctive relief in the event that principals impair, undermine or terminate their distribution relationship, in order to maintain the *status quo* in their commercial relationship while the parties arbitrate any controversy arising out of each distribution agreement or related to an alleged breach thereof, or related to the contract."); **Docket No. 16-3**, at 3 ("If [plaintiffs] contend that Law No. 75 does not apply to their commercial distribution relationship with OSI, then we both should proceed to arbitrate this matter in a forum with proper knowledge of such controversy . . . .").[3]  Accordingly, no actual dispute exists.  Finally, plaintiffs' request for a declaration "that any provision of local law prohibiting or hindering said arbitration is unconstitutional" would be nothing more than advisory.  In no way has any local law prohibited or hindered plaintiffs' ability to arbitrate their claims.

---

[3] As a review of defendant's July 14, 2008, response letter to plaintiffs' arbitration demand makes clear, defendant's contention is that plaintiffs have failed to specifically allege a claim that is subject to arbitration (or follow appropriate procedures as established in the Agreements).  **Docket No. 16-3**, at 2; **Docket No. 10**, at 5 (further acknowledging their willingness to arbitrate). Further, defendant explains that if plaintiffs' contention is that Law 75 is not applicable to their agreements, then it should have been addressed in arbitration, not in a suit to the court.  *Id.*

Reviewing the record in the light most favorable to plaintiffs, the court simply cannot conclude that at this time there exists a "live and acute controversy that must be resolved." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Accordingly, a declaratory judgment would be improper because there is no actual controversy presented which would permit the court to act. *See* U.S. Const. art. III, § 2, cl.1; 28 U.S.C. § 2201(a).

In light of the above, the court will refrain from delving further into defendant's motion to dismiss.

### IV.  Conclusion

Based upon the foregoing, defendant's motion to dismiss for lack of subject matter jurisdiction (**Docket No. 10**) is **GRANTED** and plaintiffs complaint is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

At San Juan, Puerto Rico, this 16th day of March, 2008.

**S/AIDA M. DELGADO-COLON**
**United States District Judge**